**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAPAIRA WILLIAMS**,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA**, et al.,<br><br>Defendants. | Case No. 1:25-cv-04227 (TNM) |

**MEMORANDUM OPINION**

Japaira Williams alleges that she was subject to an illegal search and seizure by Secret Service officers after they observed a handgun sitting on the floor of her parked car. Relevant here, she has sued the United States and Secret Service Officers W. Al Madhi, Justin O'Brien, and B. McDowell (altogether, "Federal Defendants") to recover for her injuries. Before the Court is their Motion to Dismiss. *See* Mot. to Dismiss, ECF No. 22. Williams has conceded all but Count I of her Complaint, a claim for relief under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because special factors counsel against extending the *Bivens* cause of action to this new context, the Court will dismiss the case.

**I.**

The Court accepts "as true" the allegations in the Complaint for purposes of deciding this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While conducting "plain view searches" of vehicles on G Street NW, Secret Service Officer Justin O'Brien spotted an unholstered gun on the floor of a parked car. Compl. ¶¶ 7–8, ECF No. 1. The gun appeared loaded. *See id.* ¶ 8. Having identified Williams from surveillance footage of her exiting her car, Officers Al Madhi and McDowell arrested her at gunpoint before

she could return to her vehicle. *Id.* ¶ 10. Williams informed the officers that she possessed a valid firearm registration and a valid concealed carry license. *Id.* ¶ 11. But Metropolitan Police eventually transported Williams to the D.C. Jail, where she was detained overnight. *Id.* ¶ 12. The District of Columbia charged Williams with two firearm-related counts, though it ultimately dismissed both. *Id.* ¶¶ 12–13.

Williams sued the District of Columbia, the United States, and the three Secret Service officers in their individual and official capacities, alleging a host of tort and constitutional claims. *Id.* ¶¶ 18–73. The District moved to dismiss, D.C. Mot. to Dismiss, ECF No. 15, which Williams failed to oppose, and the Court then granted as conceded, *see* Mem. Order, ECF No. 26. The Federal Defendants separately filed the pending motion. Williams has filed her opposition, *see* Pl.'s Opp'n to Federal Dfs.' Mot. to Dismiss ("Opp'n"), ECF No. 29, and the Federal Defendants their reply, *see* Dfs.' Reply ISO Mot. to Dismiss ("Reply"), ECF No. 31.[1]

## II.

The Federal Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).[2] A complaint survives a Rule 12(b)(6) challenge if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). This standard ensures that, if Williams can prove everything she pleads in her Complaint, the Federal Defendants can be held liable to her. So the Court first treats the

[1] While briefing on the present motion was ongoing, Williams sought leave to file an amended complaint. *See* Mot. for Leave to File First Am. Compl., ECF No. 28. The Court denied the motion without prejudice for failure to include a redline comparison of the original and amended complaints in violation of the Court's standing order. 8/7/2026 Minute Order; *see* Standing Order, ECF No. 2. Williams has not renewed her request. In any event, dismissal of the current complaint is without prejudice.

[2] The Federal Defendants also sought dismissal of two of Williams' now-conceded claims under Federal Rule of Civil Procedure 12(b)(1). Mot. to Dismiss at 5–6.

complaint's factual allegations as true, and it then asks whether those allegations give rise to "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Williams proceeds *pro se*.[3] This *pro se* status entitles Williams to special solicitude. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). The Court thus "construe[s] the allegations of [her] complaint liberally." *Redmond v. Fulwood*, 859 F.3d 11, 13 (D.C. Cir. 2017).

**III.**

Williams has conceded five of the six counts against the Federal Defendants in her Complaint. Count II alleges that the officers and the United States violated Williams' Second Amendment rights. *See* Compl. ¶¶ 30–41. Counts III through VI allege various tort claims against the United States. *See id.* ¶¶ 42–67. In her brief, Williams stated that she "d[id] not oppose dismissal" of these counts or her claims for "[o]fficial-capacity damages." Opp'n at 2.

"Even under the relaxed pleading standard afforded to *pro se* litigants," a plaintiff's "express abandonment of [her] . . . claims should be given effect." *Bravo v. U.S. Marshals Serv.*, 684 F. Supp. 3d 112, 121–22 (S.D.N.Y. 2023); *see Austin v. Ford Models, Inc.*, 149 F.3d 148, 156 (2d Cir. 1998). Thus, Williams has conceded these claims, and the Court will dismiss them.

**IV.**

Williams' sole remaining claim is against the officers in their individual capacities. It purports to proceed under the implied constitutional cause of action created in *Bivens*, 403 U.S.

[3] The Federal Defendants provide some evidence that Williams may be a member of the New York State bar. Mot. to Dismiss at 4 & n.3. The Court nonetheless treats Williams as it would any other unrepresented party.

at 397, and asserts a violation of Williams' Fourth Amendment right against unreasonable search and seizure, Compl. ¶¶ 18–29. This claim fails because Williams lacks a cause of action.

The Constitution "does not in so many words provide for its enforcement by an award of money damages." *Bivens*, 403 U.S. at 396. But in *Bivens*, the Supreme Court created a cause of action directly under the Fourth Amendment to permit a plaintiff to recover damages from federal narcotics agents. *See id.* at 397. Those agents allegedly manacled and strip searched the plaintiff and threatened his family in their apartment. *See id.* at 389. "Over the following decade, the Court twice again fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, and second, for a federal prisoner's inadequate-care claim under the Eight Amendment." *Egbert v. Boule*, 596 U.S. 482, 490–91 (2022) (first citing *Davis v. Passman*, 442 U.S. 228 (1979), then citing *Carlson v. Green*, 446 U.S. 14 (1980)).

The Court has since repented of its prior liberal recognition of implied causes of action. *See Ziglar v. Abbasi*, 582 U.S. 120, 132–33 (2017). It has not extended *Bivens* in over 40 years. Barring "the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Boule*, 596 U.S. at 486. Courts now conduct a searching two-step inquiry before they can greenlight a *Bivens* suit. They first ask if a case presents a "new *Bivens* context" by "meaningfully differ[ing] from the three cases in which the [Supreme] Court has implied a damages action." *Id.* at 492 (cleaned up). In this inquiry, "even a modest extension is still an extension." *Abbasi*, 582 U.S. at 147. So, for example, a new context exists where a case involves a "new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

If the case does present a new context, courts move to the second step and will deny a *Bivens* remedy if there are "special factors" indicating that Congress is better equipped than the

Judiciary to "weigh the costs and benefits of allowing a damages action to proceed." *Abbasi,* 582 U.S. at 136. For instance, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Boule*, 596 U.S. at 498. More, the "uncertainty" of the "systemwide consequences of recognizing a cause of action under *Bivens*" in a new context can itself be a "special factor that forecloses relief." *Id.* at 493 (cleaned up).

Now apply those principles here. Because she asserts a Fourth Amendment violation, Williams argues that her case is indistinguishable from *Bivens*. Opp'n at 2–3. But it is not enough that Williams grounds her claim in the same Amendment as *Bivens*. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *See Hernández v. Mesa*, 589 U.S. 93, 103 (2020).

Williams' claim presents a new context in several respects. She names a "new category of defendants": Secret Service officers. *Malesko*, 534 U.S. at 68. "While the agency name emblazoned on a federal officer's badge may seem like a trivial matter, federal agencies have different duties, jurisdictions, and authorities that could alter the relevant legal analysis." *Lovett v. United States*, 835 F. Supp. 3d 172, 184 (D.D.C. 2024). So can the "rank of the law enforcement personnel" involved. *Id.* (emphasis omitted) (citing *Abbasi*, 582 U.S. at 139–40).

Courts have thus recognized that a suit against Secret Service officers presents a new *Bivens* context. *See Jones v. U.S. Secret Serv.*, 701 F. Supp. 3d 4, 12–13 (D.D.C. 2023), *aff'd*, 143 F.4th 489 (D.C. Cir. 2025). The Secret Service Uniformed Division, tasked with guarding the residences and facilities of senior government protectees, has a unique mission far removed

from that of the *Bivens* narcotics agents. *Accord Lovett*, 835 F. Supp. 3d at 184. More generally, the Supreme Court and the D.C. Circuit have consistently rebuffed attempts to extend *Bivens* to new classes of federal officials. *See, e.g.*, *Mesa*, 589 U.S. at 96–97 (Customs and Border Protection Agent); *Buchanan v. Barr*, 71 F.4th 1003, 1005–06 (D.C. Cir. 2023) (U.S. Park Police).

The nature of Williams' claim also differs significantly from *Bivens*. *Bivens* involved a warrantless entry into the plaintiff's apartment, where federal narcotics agents allegedly "manacle[ed] [him] in front of his wife and children, . . . threatened to arrest the entire family," and then "searched the apartment from stem to stern." 403 U.S. at 389. By contrast, Officer O'Brien conducted a "plain view search[]"of Williams' car while it was parked on a public street. Compl. ¶¶ 7–8. Officers Madhi and McDowell then arrested Williams in public, after she exited a restaurant close to the White House and "before she returned to her vehicle." *Id.* ¶ 10.

These distinctions matter. The Fourth Amendment privileges the home. *See* U.S. Const. amend. IV; *see also Abbasi*, 582 U.S. at 140 (describing *Bivens* as a claim against agents for "handcuffing a man in his own home without a warrant"). The text of the Amendment expressly protects not only "houses," but also the security of one's own "person[]." U.S. Const. amend. IV. To the extent that Williams seeks to recover for the alleged unreasonable search of her car, her claim differs from *Bivens* because vehicles have weaker Fourth Amendment protections than homes or persons. *See Collins v. Virginia*, 584 U.S. 586, 592 (2018) ("When . . . the automobile exception come[s] into play, officers may search an automobile without having obtained a warrant so long as they have probable cause to do so." (cleaned up)).

Assuming Williams separately seeks to recover for her alleged arrest at gunpoint in public, that situation also differs from *Bivens*. Public arrests based on probable cause, unlike

arrests in the home, are not subject to the Fourth Amendment's warrant requirement. *See Payton v. New York*, 445 U.S. 573, 587–90 (1980). In short, there is unique "judicial guidance as to how an officer should respond to the problem or emergency to be confronted" with respect to both theories. *Abbasi*, 582 U.S. at 140. Thus, this case presents a new *Bivens* context because it would require the Court to break new legal ground. *See Lovett*, 835 F. Supp. 3d at 182–83.

Williams counters that the "new-context inquiry turns on the nature of the conduct alleged, not merely the defendants' agency." Opp'n at 2 (citing *Abbasi*, 582 U.S. at 139–40). And she seeks to distinguish her case from past cases implicating national security because it does not involve "any specific protective mission, threatened individual, or security event." *Id.* at 2–3. Williams misunderstands the inquiry. Her task is not to distinguish cases that are distinct from *Bivens*; she must show that her case is not meaningfully different from *Bivens* itself. *See Boule*, 596 U.S. at 492. For the reasons already stated, her allegations are meaningfully different from *Bivens* because they involve Secret Service officers who conducted a search of an automobile on a public street and made a public arrest. Williams is simply wrong that this is "the kind of Fourth Amendment claim *Bivens* itself addressed." Opp'n at 3 (cleaned up).

Second, "special factors" counsel against extending *Bivens* to this new context. *Abbasi,* 582 U.S. at 136 (cleaned up). To start, Williams has alternative remedial schemes available. She already invoked one by bringing a claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. *See* Compl. ¶¶ 62–67. Though it does not displace *Bivens* entirely, the FTCA is "the exclusive remedy for most claims against Government employees arising out of their official conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010); *see Mesa*, 589 U.S. at 111 n.9. The availability of FTCA claims therefore weighs significantly against extending *Bivens* here. *See K.O. by & through E.O. v. Sessions*, 41 F.4th 664, 665 (D.C.

Cir. 2022) (Silberman, J., concurring) ("[P]laintiffs in this case had an alternative remedy for damages under the [FTCA] . . . which makes their appeal for a *Bivens* action seem wholly superfluous.").

Williams has available a variety of administrative remedies that further weigh against extending *Bivens*. *See Jones v. U.S. Secret Serv.*, 143 F.4th 489, 494–95 (D.C. Cir. 2025). Congress has designated an Inspector General to investigate misconduct by Homeland Security employees. 5 U.S.C. § 402. Williams can make a report to this office.[4] She may also report the officers' conduct to the Secret Service Office of Professional Responsibility, Inspection Division.[5] Or to the Homeland Security Office for Civil Rights and Civil Liberties.[6] 6 U.S.C. § 345. *Accord Lovett,* 835 F. Supp. 3d at 184 (noting similar remedies in case involving Secret Service officers).

Beyond these remedial alternatives, national security concerns counsel hesitation. "National-security policy is the prerogative of the Congress and President." *Abbasi,* 582 U.S. at 142; *Boule*, 596 U.S. at 494 ("[M]atters intimately related to . . . national security are rarely proper subjects for judicial intervention . . . ." (cleaned up)). "Judicial inquiry into the national-security realm raises concerns for the separation of powers," and the "risk of personal damages liability" for officers is "likely to cause an official to second-guess difficult but necessary decisions concerning national-security policy." *Abbasi,* 582 U.S. at 142. The role of the Secret Service in protecting the nation's top leaders is essential to national security. "Given the nation's

[4] *See Hotline: Report Corruption, Fraud, Waste, Abuse, Mismanagement, or Misconduct*, Off. Inspector Gen. (last visited Sept. 17, 2026), https://perma.cc/3YQV-FZX4.
[5] *See Report Employee Misconduct*, U.S. Secret Serv. (last visited Sept. 17, 2026), https://perma.cc/JP3N-C6N4.
[6] *See Make a Civil Rights Complaint*, Homeland Sec. (last visited Sept. 17, 2026), https://perma.cc/9ZYQ-SGAE.

'overwhelming . . . interest in protecting the safety of its Chief Executive,' officers responsible for the protection of the President and other high-ranking officials 'must be able to act without hesitation.'" *Jones*, 701 F. Supp. 3d at 13 (first quoting *Watts v. United States*, 394 U.S. 705, 707 (1969), then quoting *Buchanan*, 71 F.4th at 1009). Judicial invention of a *Bivens* remedy would therefore risk interfering with Secret Service officers' duties with little appreciation of the practical consequences. *See Boule*, 596 U.S. at 493.

Williams responds that national-security policy is not "directly implicated" here because the officers did not "respond[] to a perceived threat" or take "cross-border" actions. Opp'n at 2–3. She adds, without citation, that the availability of alternative remedies matters less "where, as here, the conduct alleged bears no relationship" to national security. *Id.* at 3. But again, Secret Service officers' investigation of a loaded gun blocks from the White House inherently implicates national security because of their special protective duties.

Finally, Williams objects that she has no alternative remedy available because she "does not contest" that her FTCA claim is "time-barred." *Id.* at 3. But courts ask only "whether the Government has put in place safeguards to prevent constitutional violations from recurring," so Williams' individual untimeliness is irrelevant. *Boule*, 596 U.S. at 498 (cleaned up). Indeed, it only highlights Congress's policy decision to limit relief in certain contexts.

The availability of alternative remedies and the presence of national-security concerns counsel against extending *Bivens* to this new context. Williams thus lacks a cause of action against the officers.

## V.

In sum, Williams has conceded five of her six claims against the Federal Defendants. Her one remaining claim purportedly brought under *Bivens* fails for want of a cause of action.

For these reasons, the Court will grant the Federal Defendants' Motion to Dismiss. A separate Order will issue today.

2026.10.05
11:56:08 -04'00'

Dated: October 5, 2026

TREVOR N. McFADDEN
United States District Judge